Good morning, Your Honors. Mark Pifko from the law firm of Barron & Budd for Plaintiff Petitioner Appellant Michael J. Otto. I would like to reserve three minutes of my time for rebuttal. I'll let you watch the clock. Just keep your eye on my clock. The main issue in this case is the court's granting of the 12B6 motion, but I would like to take some time to also discuss the class certification orders, including why this court can and should review those orders post-Baker v. Microsoft. With respect to the 12B6 motions, the first issue is the standard under which the court should have evaluated them. In the briefing, there's some discussion about whether there's a – Abbott contends that there's a heightened standard under the Lanham Act. Their only case that they cite to regarding the Lanham Act is the Cleary case. Now, the Cleary case does not say that there's some special pleading standard that applies to a UCL claim. What the Cleary case says is that they're – technically what it says is they're reasonably congruent or something to that effect, which is basically just saying that the Lanham Act is similar to the UCL. We don't disagree with that point. But then if you look, what Cleary says in citing some cases, then, is that they're similar because the standard under both the UCL and the Lanham Act is a likely-to-deceive standard. So although Abbott contends that there's some other standard, the case law really sets forth that the standard is a likelihood to deceive, and that is the same standard that this court has articulated in numerous opinions, including the Williams v. Gerber case, the Pulaski v. Middleman case, and we cited the Davidson v. Kimberly-Clark case that was recently issued by this court. Now, understanding that to be the standard, the district court committed error when it essentially turned Iqbal Twombly on its head and conflated standards of pleading and proof. So we understand that a plaintiff suing a food manufacturer or anybody who's making an advertising claim, a private plaintiff cannot merely sue and say, well, you don't have evidence for your claim. Only the government has the authority to make that kind of claim. So when a private plaintiff comes forward, they need to have something to back what they're saying. They can't just say, you don't have evidence. But as revealed in the Quan case that we cited, that was another recently issued decision from this court, that can include just the plaintiff saying, I bought this item and it did not work for me, and that's enough to not be making a prior substantiation claim. Here, in this case, we did much more. I contend in spades went beyond what was probably required by providing numerous studies that show that the claims made by the defendant in this case were false and misleading and indisputably likely to deceive. In the second amended complaint, which was the ‑‑ So this court looked at the studies and just wasn't convinced that it made out the case you claim it did, that you were citing partial snippets from the studies, but when you looked at the whole study, it just didn't support your claim. You do agree that under Equal Entombly you do have to come forward with something, right? Well, I agree that we had to come forward with something, and like I said, as ‑‑ This court looked at your something and said it's nothing. Well, that's where ‑‑ That's the battlefield. That's where the district court committed. That's where the something is something rather than nothing. Well, the district court committed error because the district court was not permitted under Equal Entombly or under Williams v. Gerber to go in to that level and read the studies. Why not? Why not? I mean, you adverted to the studies, right? Well, we cited to them. I think the district court ‑‑ So why couldn't the district court read them? Well, I think that it was appropriate for the district court to read them and say ‑‑ You're saying that the district court could read them but made a mistake in reading them too closely. Right. If we said ‑‑ They should have just skimmed them. Well, they should have. The district court had ‑‑ I believe the district court had the ability to read the studies and see if they said the language we said. We said it concludes X. The district court could read that and see if that's not in there. Proofreading. Yeah. District court was limited to proofreading. Right. But I contend that ‑‑ And, you know, if your language is in there and you skipped a not or a no, we'll get to that on summary judgment. Well, if we did that, if we had made a quote and misquoted it or left something out. But you had little dots, and the little dots, you know, the ellipses, stood for a not. Right. We could not do that. I agree. And the district court had the ability to ‑‑ It can actually look at the sense of the thing that the report says and see whether what you are quoting fairly represents what the report says. I agree. It's not just a proofreading exercise. So if you give a sentence and the sentence in context means exactly the opposite of what you claim it means by just quoting one sentence, the court can look at that, right? Well, the court can look at the sentence and see if it says what it says. But the court cannot do what the court did here is to then parse through ‑‑ It can add the not, the missing not, but it can't look at things before and after? Correct. The court cannot do that. Where does that rule come from? Well, I mean, the rule comes from Iqbal Twombly, which just says that merely you're supposed to look for it to see if the claim is plausible. There's no ‑‑ the court turned this exercise into ‑‑ It's a plausibility claim by quoting one sentence out of a report. If you are relying on something that's a report, you don't say, well, there's a sentence in there that supports me. You have to look at the whole thing and see whether or not the report, in fact, supports you. Well, let's look at exactly what the court did here. There's four studies at issue in the Second Amendment complaint. Well, no, but we have to see whether we agree or disagree on that point. You seem to disagree that when you rely on a report and you quote it, what I hear you saying is the only thing the court can do is look at the quote and not look at the whole report and see does the whole report, in fact, support you. Well, it's not that easy in the case of a scientific study. Just like we lawyers have years and years of training to parse through opinions and understand trends in the law, scientists read a study and they understand what the language means and they understand the weight of authority, just like we would do that with a series of cases. True, but irrelevant. If you're saying they can look and they have to get it right, the district court can look and get it right. I understand that. You can say the district court looked at it and got it wrong, misunderstood the study. But you have to agree that the district court can look at the study and make an assessment as to whether, in fact, it supports a complaint. Well, if we misquoted something out of context or, again, misquoted something, then the district court can look and see, well, you're saying this study says this, but it really doesn't say this. But the district court here did way more than that. The district court, let's say – Can it do that? Excuse me? Are you conceding that it can read the study and say, well, I don't think this supports the proposition that you cited for in the complaint? Well, I think it's context specific. I think in the case of a scientific – reading a scientific article, which was the situation here, I do not think the court is permitted to do that and I don't think a court is qualified to do that. Why? Because it's not intelligent enough to do it? It's not a measure of the court's intelligence. It's about qualifications. Not qualified or experienced to read a scientific article. Yeah, and to read a scientific article and say, I'm going to take this position in the article, but I'm going to disagree with this. I don't think a district court or any court is qualified to do that. That is the purview of a scientific expert. Are you going to throw all these patent cases out of federal court? That's what you do in patent – district court judges do in patent cases all the time. You're going to – Well, I assume that in that situation, there's experts and things. We weren't even – I contend that what the district court did here would not have been proper even in a summary judgment situation. But keep in mind, we're only at a 12B6 stage in the case. And all that was required was for the district court to see if it was plausible that the claim was likely to deceive based on the evidence. And it did far more. I want to walk the court through the studies. Keep in mind, there were studies cited in the First Amendment complaint, which the court improperly disregarded. And then there are additional studies in the Second Amendment complaint. The studies in the Second Amendment complaint included the Pantone study. Now, what the – that study – you cannot dispute that what that study said was that the ReVigor HMB did not build strength in the people who were studied. And they were elderly people who were within the target market for this product. And the study indisputably concluded that there was no building of strength. But what the district court here did is it said, well, people there were weightlifting while they were taking this product. And what the claim is on this product is that it helps rebuild strength naturally lost over time. And you can't take a study on elderly people who might be doing some strength training and take that conclusion that it doesn't work for those people and say that it doesn't help rebuild strength naturally lost over time. That was stretching it too far. The study says it doesn't work. And I don't understand how a court is qualified to say, well, you know, just because the study was on young children doesn't mean – means that it doesn't apply to adults. How – what was in the record and what were the qualifications for the judge to say that that study doesn't plausibly suggest that people are likely to be deceived? It's not there. The court just usurped its own judgment for the judgment of a scientist about whether that would be probative of that. The next study was the – Before you exhaust your time, I'm very interested in why you think you're entitled to be here on the class certification. Thank you, Your Honor. I appreciate the opportunity to speak on that issue. Okay, so Baker v. Microsoft deals with the situation where a case is brought to certification and plaintiffs lose certification and they decide they don't want to spend the money to take it to trial because it was a class case and maybe the individual case isn't worth that much. They voluntarily dismiss the case or stipulate to dismiss it in some way. With prejudice. Yes. And the Supreme Court – That's what you did. No, not on – so we're here – let me walk you through that for a second. The court – the district court here, in addition to its improper reading of the studies, split our case in a way that we never pled it. We said it was false and misleading, and if you read the appropriate standard, which is likely to deceive, we gave ample evidence why it was plausible that it was likely to deceive. The district court, though, in its ruling on the second-minute complaint, made an artificial distinction of a literal falsity branch of our case and a deception by omission branch of our case. That is not the way that the UCL and the CLRA work, and that is not what we pled. We never pled literal falsity. Anyhow, the district court ultimately what it did was it said at the 12B6 stage, you're only allowed to proceed with your case on this small factual theory. And it said you can't talk about these other factual theories. So we were unable to do that. We moved through class certification on this small factual theory. Down to two minutes. Okay, thank you. Anyhow, so some of the case was voluntarily dismissed. But we're here. There was a motion to dismiss this case for lack of jurisdiction filed here, and that was denied. We are indisputably here. The court has jurisdiction because there was a granting of a 12B6 motion with prejudice. And while we're here, it is important that the court review these class certification orders because to the extent that the court made legal errors in those orders, they're going to, assuming the court reverses the 12B6 ruling, they're going to infect the outcome of that case because they have the potential to be law of the case with respect to legal issues that may come up. Defendant argues that it's speculative about what will happen. But the only thing that's speculative is what they might do with it. The orders exist, and unless this court reverses them, they're going to exist and have the potential to impact the case. I want to bring up another case. If we were to agree with you on the literal falsity claim and remand that, couldn't you re-raise the issue of class certification below? I certainly intend to do so. But my concern is that the defendant or the court says, well, I've already ruled on materiality. I've already ruled on flipping the standard about who the burden of proof is. So what you're telling me is you could, but you think you're going to lose. Well, I'm concerned that the district court will just say I've revisited this. And I think that the court made, for the reasons discussed in our briefing, erred in deciding materiality. It violated Stern's in deciding that reliance would vary for the UCL claim. And it erred in shifting the burden to us in response to Abbott's motion to deny class certification. I would anticipate, if we were to send literal falsity back, that the district court would rule in the way you just described. So your position is take care of it here. Well, we're here. And I was also going to say under the Cohen v. Beneficial Life case that is cited in our papers, the court also has the collateral order doctrine would permit the court to review these orders. I've taken you over your time. Thank you. May it please the Court. I'm Chris Landau, and I'm here today for Abbott. I'd like to start first with what is actually before this Court. My colleagues, my friend got up and said the district court granted the 12b-6 motion. In fact, the district court denied the 12b-6 motion for most of the case. The only sliver that the district court granted a 12b-6, granted our motion to dismiss, was insofar as he was pleading a literal falsity theory. The district court said that's out of the case. The district court let him proceed with his claims that it was misleading or deceptive or confusing. The district court just recognized that when you bring these kind of a claim, there are two ways to look at it. One is to say, is it literally false? And in that narrow subcategory of cases, the plaintiff is relieved of the burden to show a reliance. Then you can also have a theory that it's misleading or confusing, even if it's not literally false. The only thing that was actually dismissed here was the literal falsity component. So it's a little bit confusing. Do you agree we have jurisdiction over that? Yes, Your Honor, we do. It's a little bit confusing, though, because my colleague gets up here and says, we never even pleaded a literal falsity claim. Well, if that's true, then they didn't lose anything in the motion to dismiss. It's somewhat confusing why they seem to think that that helps them to say that, because the only thing that really the district court dismissed, the only claim over which there would be jurisdiction, because everything else they voluntarily dismissed, was this order dismissing their claim insofar as it pleads literal falsity. And I think it's very important to understand that piece of the puzzle, to understand the whole Iqbal Twombly pleading issue, because obviously whether or not something is plausible under Iqbal Twombly really turns on what the claim is. If the claim is a very demanding claim, then to state it, to make it plausible, you need more than if the claim was a much more open-ended claim. And I think that's the trap into which they're falling. The district court only said, this has gone insofar as they are pleading literal falsity. So if they are pleading literal falsity, that's where it's an unambiguously false statement, either on its face or by necessary implication. And the district court said, when I look at these studies that you have cited in your complaint and I accept the studies, then it goes back to the point the district court recognized that the Second Amendment complaint cherry-picks the studies. And I think this is really the heart of the case, that they come with some language and then they've said, well, you can't look at the next sentence. The district court certainly cannot play scientist in the sense at the 12b6 stage, in the sense that the district court can't say, well, I disagree with the methodology or I don't think it's the right population. But the district court can certainly at the 12b6 stage just take the study on its face and say, well, counsel, you quoted, you know, this sentence here. But what you didn't quote is the next sentence. It's very much like the not. In fact, their citation of the Fuller study, it cites some very general sentence and then it keeps out the next sentence where it says, but we did observe strength increases in this study population. So you can't cherry-pick and then say, oh, no, the judge at the 12b6 stage is precluded. He can only look at, he or she can only look at the snippets that we quoted. That is not the law. When you cite anything in your complaint. I think the claim he's making is that without expert evidence, the district court can't really tell whether statements in the report contradict each other or qualify each other and that at the 12b6 stage, it's enough if there's something in there that seems to support them. And that meets Twitwell. Your Honor, I certainly think a report, you don't need experts to be able to read the conclusion of a report. If somebody, the court has. That I understand to be the argument. I understand it to be the argument, too. I think that is incorrect as a general statement that you can't. Again, there is a line here. The judge, a judge can certainly look at the four corners of the document that they have put into play by citing the document as they did here in their second amended complaint. And what the judge here did is said, this was not a battle of the experts kind of case. What the judge said is, I'm reading your sentence here. But what you don't acknowledge, Plaintiffs, what you are kind of trying to artfully plead is the next sentence actually says, well, we actually did observe strength increases. And so I think this case really boils down to kind of a pretty straightforward application of Iqbal and Twombly in the context of a literal falsity claim where the standard already set by the substantive law is a very demanding standard. And again, just to, I can't reiterate enough how important it is that the court left them the bulk of their claim. The court left them their whole misleading, deceptive, confusing claim until they themselves voluntarily dismissed that to pursue this appeal. But the only thing that became ripe through their appeal, through the final judgment ultimately, was this one piece of the case that had been dismissed by the court earlier on with respect to literal falsity only. So what the court said is, I have these four studies. These four studies, the first two, Bayer and Fuller are really one study that was conducted by the same people. And what they did is, in the initial round in Bayer, they were looking for increases in muscle. And they said, we did find increases in muscle. We didn't notice any increases in strength. And then they went back in what's called the Fuller study. But again, it's important to understand, it's the same data and the same people as the Bayer study. They just reanalyzed their data and said, you know something? We realize now on reflection that we do see strength increases when you account for vitamin D. There were strength increases in people with the normal vitamin D levels, which were also recorded as part of that initial study, just not when they were vitamin D deficient. The other two studies ‑‑ Can that be a basis for saying it was literally false? It could not be a basis for saying it's literally false with respect to the population at large. And the district court let them have a ‑‑ let them pursue the theory that it's misleading with respect to people who are vitamin D deficient. I think it can't be literally false if it is true with at least a statistically significant number of people. I think that's the kind of line that you draw between literal falsity and misleading by implication. So I think if it's ‑‑ whereas here it's ‑‑ Claim has to be literally false as to everyone who might read it. You know, I think it certainly can't be literally false if it is true with respect to a statistically significant group of people. I mean, if it's false as to ‑‑ if it's true only as to one person, then I think it probably could be. But I think that they don't deny that the people who are vitamin D normal is not ‑‑ we're not talking about one person. Did any of these studies attempt a statistical estimate of what portion of the public is vitamin D sufficient? Certainly in the plaintiff's complaint, they themselves, this is in the second medical case. Let me ask you about studies. I don't know that the studies got into that. The plaintiffs have said that about at least a third of the population, of this older population, is vitamin D sufficient. And, of course, this product has vitamin D in it. And the other studies, the Panton study and the EFSA opinion, are both in exercising adults. And those are both studies that said we don't observe any increase in strength in people who are already exercising regularly above and beyond the benefits that we're seeing from the exercise. The studies were on the ingredients, not the product. The studies were, yes, on this HMB. Ingredient. And I heard you say that the product has vitamin D, and I'm just wondering how that relates. Does that sort of cure any vitamin deficiency? Is that the claim? You know, I think that it was an observation, Your Honor. I don't think that's literally a critical component. But this is a product that also does give the vitamin D. I think it depends how low somebody's deficiency is, that, frankly, the product itself may cure it with respect to some people. In other words, when you have the vitamin D you're getting from the product, it may already put you in the world of having enough vitamin D. That's probably an empirical issue. We don't need that point to win. I think the broader point here is that the plaintiff is cherry-picking these studies. And one thing that's very important is the plaintiff changed his theory of the case from the First Amendment complaint to the Second Amendment complaint. The original complaint and the First Amendment complaint were about, the claim was this product as a whole helps you only if you are already exercising. It doesn't work for non-exercising adults. In the Second Amendment complaint, the plaintiff changed the theory to say the Revigor ingredient alone, this HMB metabolite, does not increase strength, as opposed to muscle mass. So when you look at the studies, the Panton study and the EFSA opinion, those are just saying that it doesn't increase, they didn't notice an increase in strength in people who were already exercising. But that doesn't really speak to the question of what about the people who are not already exercising. And, in fact, the only evidence that was pleaded on that was the Fuller study, which actually, again, was on the face of the complaint. What about Microsoft? Okay, with respect to that whole issue, Your Honor, we think it's pretty clear that after Microsoft, that the whole class certification piece of this thing is gone, that that became moot when they voluntarily dismissed their claims seeking to bring a misleading or deceptive claim. It's a little bit different than Microsoft in the sense that we don't deny that there is jurisdiction over something, we don't deny that there is appellate jurisdiction over the piece of this case that was previously dismissed against their will in the Second Amendment complaint, that narrow, literal falsity component. So unlike Microsoft and the other cases in that vein, those were cases where the entire case was dismissed. Here we can see that there is appellate jurisdiction over that one piece. If the panel were to send that back, do you agree that they could ask the district court to certify a class? Yes, Your Honor. We do agree with that. But we think the one thing that they can't do is ask this court to review the class certification orders for this other claim, the deceptive-slash-misleading claim. That's not properly before this court because that whole claim is gone now. That's the price of admission that they paid by choosing to abandon that and come straight to this court. So they made their once narrow sliver of the case come back to life for appeal, the literal falsity slice. And that would define the contours of any kind of renewed class litigation were this case to go back. Correct, Your Honor. It would only concern whatever class may or may not be proper around the literal falsity claim. Correct. And, again, I think what is particularly confusing, then, is when my friend comes up here before this panel today and says, we didn't even plead a literal falsity claim. So he seems to be disclaiming a literal falsity claim. If he's disclaiming a literal falsity claim, then I have no idea what he thinks we're doing here today. Well, we can ask him that. I have the impression that at some point when the district court dealt with Abbott's affirmative motion to deny class certification, that they asked to certify that question for interlocutory appeal? Yes, Your Honor. They filed 23-F petitions with respect to both of the class certification motions, the one that we brought initially to strike the class allegations and the one that they subsequently brought. The district court refused? Well, this court did not. The district court refused to certify both classes, and then they sought Rule 23-F appeal from this court, and that was denied. And then they followed this tactic of voluntarily dismissing everything in the case that they had left in order to try to get this appeal. And so that not only killed the class cert part of it, it's a Microsoft, but it killed the whole misleading slash deceptive part of it. So the only piece of the case that is left is this piece that, as I hear them, they purport to be renouncing here today. So, again, I'm not sure what they're trying to get. But whatever it is, it has to be, for literal falsity, it has to be unambiguous and clear, and it certainly can't be if it is true with respect to a large portion of that. It's important to understand that these kind of claims by their very nature are not individual warranty claims. So you can't state this kind of a claim just by saying it didn't work for me. You really have to show that it didn't work for the reasonable consumer. It was deceptive to the reasonable consumer. So, again, I think the key point here really is that the district court is not only allowed but required to actually look at the studies or whatever is cited, whether it's a study or a contract. A lot of times people come in and they plead, oh, paragraph 9 of a contract. Well, then the contract is legitimate to look at, and the court can say, well, now I'm seeing paragraph 10. There is certainly nothing that requires the court to accept their characterization of the studies. And all the court did here, it says, look, I'm looking at the study and I'm seeing that what you're purporting to characterize as a study is a wrong characterization of the study. There's no battle of the experts because the court doesn't say, I think this study is flawed, I think this study is not probative. It's just saying, I'm looking at what the study purports to do, and it's not purporting to do what you're saying it does. So with that, I see my time is almost up, and I appreciate the court's time and would like the court to affirm. Thank you. Thank you. You are out of time. We'll give you a minute for rebuttal. Thank you, Your Honor. I'd just like to clarify a few points. Abbott's counsel has just been brought in for the appeal. I lived this case and drafted all the pleadings and made all the arguments, and that's why he doesn't understand what the difference is with the claim here. Let me walk you through it. We plead that it was false and misleading. Now, it's false because all those studies say this ingredient does not provide a strength benefit. The European Food Safety Authority indisputably said there is no causal link between HMB and strength. Now, the Fuller study, he wants to say that the Fuller study was not the court acting as a scientist, but counsel just used the word. What the Fuller study said was we observed strength gains in a vitamin D sufficient aspect of the study population, but an observation that strength was gained by those people does not mean causation, and that's what a scientist would understand in looking at that. Now, I want to point out one other thing. So counsel said, well, all that was dismissed was a literal falsity claim in the ruling on the second amended complaint. That is not true. If you look at paragraphs 43 and 71, we said in addition to the fact that all these studies conclude that this ingredient does not cause a strength gain, the Fuller study also observed that a potential reason why there was no finding of strength was because of a lack of exercise and because of the vitamin D issue. And that's pledged, again, in paragraphs 43 and 71. The court only permitted us to go forward with the vitamin D issue. So there was a deception by omission claim on the exercise issue as well, as well as a literal falsity. So ultimately what the court really did was it wasn't just that it said you can't have literal falsity, you can have deception by omission. What the court said is you can't have literal falsity, and you can only have deception by omission on this one factual theory. But we had several factual theories, and those are articulated in the second amended complaint. Okay, thank you. Can I ask a yes or no question? Yes or no if you can. Your opponent said that here today you're renouncing the literal falsity claim. Is that true? No, I am not. That's all I wanted to hear. Thank you. Thank you. Okay. Thank you. The case is now submitted. We are adjourned. All rise. This court is adjourned.
judges: Parker, Kozinski, Hawkins